UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:10-CV-00172-D

| WILLIAM C. MANN, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM** |
|  | ) | **AND RECOMMENDATION** |
| M. DALE SWIGGETT, | ) | |
| Defendant. | ) | |

This matter is before the Court on (1) Defendant's motion to dismiss [DE-26]; (2) Plaintiff's motion for summary judgment [DE-28]; and (3) Defendant's motion to take depositions, remove Plaintiff's counsel, and calendar the case [DE-32]. All appropriate responses and replies have been filed. Thus, the three motions are presently ripe for review and Judge Dever has referred them to the undersigned Magistrate Judge for a memorandum and recommendation.

## STATEMENT OF THE CASE

On April 29, 2010, William C. Mann ("Plaintiff") filed a Complaint [DE-3] against M. Dale Swiggett ("Defendant") in this diversity action for libel. Defendant failed to timely file an answer, and, accordingly, Plaintiff filed a Motion for Entry of Default [DE-6] on May 25, 2010, which was granted [DE-8] by the Clerk on June 1, 2010. Thereafter, Plaintiff filed a Motion for Default Judgment [DE-9] on June 2, 2010. On July 8, 2010, Defendant, appearing *pro se*, filed a Motion to Stay [DE-13]. Judge Dever conducted a hearing on both motions on October 27, 2010, at which he treated Defendant's motion to stay as a motion to set aside entry of default.

By Order [DE-20] dated October 28, 2010, Judge Dever granted Defendant's motion to set aside entry of default and denied Plaintiff's motion for default judgment. Accordingly, Defendant, still appearing *pro se*, filed an Answer [DE-25] on November 22, 2010, as well as a Motion to Dismiss [DE-26]. On November 29, 2010, Plaintiff filed a Response [DE-27] to the motion to dismiss.

Also on November 29, 2010, Plaintiff filed a separate Motion for Summary Judgment [DE-28]. Defendant responded [DE-30] on December 20, 2010, and Plaintiff replied [DE-31] on December 21, 2010. On January 7, 2011, Defendant filed an additional Motion [DE-32], which further addressed Plaintiff's summary judgment motion and also requested leave to take depositions, remove Plaintiff's counsel, and calendar the case. Plaintiff responded [DE-33] on January 10, 2011, and Defendant replied [DE-35] on March 25, 2011.

On March 28, 2011, Plaintiff filed a Motion to Strike [DE-36] Defendant's March 25, 2011 reply. Defendant responded [DE-39] on April 15, 2011 and Plaintiff filed a Motion to Strike [DE-40] that response on April 18, 2011. On May 9, 2011, Defendant filed a motion to remove Plaintiff's counsel [DE-41] and a motion requesting discovery [DE-42], in response to both of which Plaintiff also filed a Motion to Strike [DE-43]. All three motions to strike are currently pending before the Court.

## STATEMENT OF FACTS

It appears to the Court that the basic facts which originally gave rise to this action are not in dispute. In 1985, Plaintiff, a past president of the Professional Golfers Association of America ("PGA") purchased a country club development in Alamance County, North Carolina. Compl. ¶¶ 5-6 [DE-3]. On March 26, 2009, Plaintiff and his wife filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Middle District of North Carolina; their discharge was

entered on December 7, 2009. *Id.* ¶ 7. During the pendency of the bankruptcy proceeding, Plaintiff and his wife moved to a home in South Carolina, where they continue to reside and which they ultimately purchased. *Id.* ¶ 8.

On April 7, 2010, Defendant mailed a letter with attachments to hundreds of recipients, which made reference to, among other things, Plaintiff's "environmental crimes," "fraudulent transactions," and "creation of unbuildable lots." *Id.* ¶ 12. The letter also compared Plaintiff to Ruffin Poole, who at the time was a defendant in a federal tax evasion case, and alleged that Plaintiff "left the area after declaring bankruptcy to purchase with cash a house down in Cherry Grove, SC." *Id.* ¶¶ 12-13. On April 15, 2010, Defendant mailed another letter with attachments to the judge that had presided over Plaintiff's bankruptcy case, which alleged that Plaintiff had installed an unqualified golf club management group "to cover up sludge spreading and spills," and that Plaintiff had committed "fraud, lack of disclosure, and conflicts of interest" in the bankruptcy case. *Id.* ¶¶ 14-15.

Plaintiff claims that Defendant knew the statements in the April 7, 2010 and April 15, 2010 letters were false, or acted with reckless disregard for their truth or falsity. Accordingly, Plaintiff asserts that the statements were "libelous and actionable as such, as well as defamatory per se" and "damaging, and intentionally so, to the plaintiff's reputation and to his livelihood." *Id.* ¶¶ 16-18. Defendant denies these allegations and asserts that he both believed in the truth of the information contained in the letters at the time of their mailing and continues to do so now. Answer ¶ 16 [DE-25].

## DISCUSSION

1. **Applicable substantive law**

Since this is a diversity action, under *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), the Court must apply state substantive law. In North Carolina, a claim for defamation generally requires that a plaintiff prove that the defendant "made false, defamatory statements of or concerning the plaintiff, which were published to a third person, causing injury to the plaintiff's reputation." *Smith-Price v. Charter Behavioral Health Sys.*, 595 S.E.2d 778, 783 (N.C. Ct. App. 2004) (citing *Tyson v. L'eggs Prod., Inc.*, 351 S.E.2d 834, 840 (N.C. Ct. App. 1987)). Libel— the tort encompassing written defamatory statements—is divided into three classes under North Carolina law: (1) publications obviously defamatory on their face, known as libel per se; (2) publications which may be subject to two interpretations, one of which is defamatory and the other which is not; and (3) publications not obviously defamatory but which, when "considered with innuendo, colloquium, and explanatory circumstances become libelous," known as libel per quod. *Renwick v. News & Observer Pub. Co.*, 312 S.E.2d 405, 408 (N.C. 1984) (quoting *Arnold v. Sharpe*, 251 S.E.2d 452, 455 (N.C. 1979)).

Here, Plaintiff appears to have mainly alleged that Defendant's actions constituted libel per se. *See* Compl. ¶¶ 16-18 (The statements were "*libelous* and actionable as such, as well as defamatory *per se.*") (emphasis added). To constitute libel per se, the publication in question "must be susceptible of but one meaning and of such nature that the court can presume as a matter of law that they tend to disgrace and degrade the party or hold him up to public hatred, contempt or ridicule, or cause him to be shunned and avoided." *Flake v. Greensboro News Co.*, 195 S.E. 55, 60 (N.C. 1938). North Carolina courts have also held, more specifically, that to be libel per se a statement must be one which, "when considered alone without explanatory circumstances: (1) charges that a person has committed an infamous crime; (2) charges a person with having an infectious disease; (3) tends to impeach a person in that person's trade or

profession; or (4) otherwise tends to subject one to ridicule, contempt or disgrace." *Phillips v. Winston-Salem/Forsyth County Bd. of Educ.*, 450 S.E.2d 753, 756 (N.C. Ct. App. 1995); *see also Renwick*, 312 S.E.2d at 409. Malice, if required, and damages are presumed in the case of libel per se and the plaintiff need not prove their existence. *Renwick*, 312 S.E.2d at 408. Truth is an affirmative defense to any type of libel action. *Holleman v. Aiken*, 668 S.E.2d 579, 587 (N.C. Ct. App. 2008).

## 2. Defendant's motion to dismiss

Defendant's motion to dismiss simply asks that the Court "dismiss the case with prejudice because the Plaintiff's complaint fails to prove a claim against Defendant." Mot. to Dismiss at 1 [DE-26]. No further explanation is given and no specific section of Rule 12 is cited. However, Plaintiff has interpreted this as a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted. Resp. to Mot. to Dismiss at 1 [DE-27] (referring to Defendant's "one sentence motion to dismiss, apparently premised on Rule 12(b)(6)"). The Court is inclined to agree that this appears to be the general thrust of the motion and, giving due regard to Defendant's *pro se* status, will treat it as such.[1]

Rule 12(b)(6) permits a court to dismiss an action which fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Essentially, a motion to dismiss under 12(b)(6) tests the sufficiency of the facts pleaded in the complaint. The relevant inquiry is whether the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When reviewing a motion to dismiss,

---

[1] In addition, the Court notes that Defendant has failed to comply with Local Civil Rule 7.1(d), which requires that "motions made other than in a hearing or trial shall be filed with an accompanying supporting memorandum in the manner prescribed by Local Civil Rule 7.2(a)." Local Civil Rule 7.1(d). However, Plaintiff appears to have treated the arguments in Defendant's answer, filed on the same day as the motion to dismiss, as some form of a memorandum in support. Resp. to Mot. to Dismiss at 1 ("[Defendant's] answer must be read alongside his one sentence motion to dismiss."). Once again giving due regard to Defendant's *pro se* status, the Court will overlook this omission as well.

5

a court must consider the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded factual allegations. *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994).

Here, Plaintiff has alleged in his complaint facts sufficient to support a finding that Defendant made false, defamatory statements concerning Plaintiff and that these statements were published to multiple third parties, constituting libel per se.

Plaintiff has submitted an affidavit which indicates that the statements were false. *See* Aff. of William C. Mann at 1 [DE-11]. The statements in question were contained in letters mailed by Defendant to multiple recipients on April 7, 2010 and April 15, 2010, and mentioned repeatedly, among other things, Plaintiff's alleged commission of multiple crimes, including "environmental crimes" and fraud. Compl. ¶¶ 12, 14-15. A statement which "charges that a person has committed an infamous crime" is one of the categories of libel per se that has been clearly articulated by the North Carolina courts. *Renwick*, 312 S.E.2d at 409; *Phillips*, 450 S.E.2d at 756. Accordingly, Defendant's allegations that Plaintiff committed "environmental crimes" and fraud appear to fall squarely into the category of statements constituting libel per se and thus, specific damages need not be proved by Plaintiff. Similarly, the letters contained unflattering statements regarding Plaintiff's involvement in real estate development, referencing his participation in, among many other things, the "creation of unbuildable lots." Compl. ¶ 12. Plaintiff has alleged in his complaint that the statements were "damaging, and intentionally so, to the plaintiff's reputation and to his livelihood." *Id.* ¶ 18. This, in turn, appears to fall squarely into another of the categories of libel per se, that which "tends to impeach a person in that person's trade or profession." *Renwick*, 312 S.E.2d at 409; *Phillips*, 450 S.E.2d at 756.

Furthermore, Defendant has at no juncture denied that he made the statements in question, that he published them to third parties, or that they are of the type that would fall into

the category of libel per se. He simply asserts, in his defense, that he believed the statements to be true at the time of their publication and continues to believe that they are true. While Defendant is correct that truth is a complete defense to a defamation claim, in the context of a motion to dismiss, this is of no import. Taking the facts in the light most favorable to the non-moving party—here, Plaintiff—the factual allegations are "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Therefore, at this early stage of the proceedings, Plaintiff has adequately alleged sufficient facts tending to prove that Defendant made false, defamatory statements concerning Plaintiff and that these statements were published to multiple third parties insofar as to survive a motion to dismiss. Accordingly, the Court **RECOMMENDS** that Defendant's motion to dismiss be **DENIED**.

### 3. Plaintiff's motion for summary judgment

Summary judgment is appropriate pursuant to Rule 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations or denials in its pleading, *Anderson*, 477 U.S. at 248, but "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). As this Court has stated, summary judgment is not a vehicle for the court to resolve disputed factual issues. *Faircloth v. United States*, 837 F. Supp. 123, 125 (E.D.N.C. 1993). Instead, a trial court reviewing a claim at the summary judgment stage should determine

7

whether a genuine issue exists for trial. *Anderson*, 477 U.S. at 249. In making this determination, the court must view the inferences drawn from the underlying facts in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curium). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 247-48.

In North Carolina, in order to recover for any type of defamation, the plaintiff must prove that the defendant "made false, defamatory statements of or concerning the plaintiff, which were published to a third person, causing injury to the plaintiff's reputation." *Smith-Price*, 595 S.E.2d at 783. However, truth is an affirmative defense to a defamation action. *Holleman*, 668 S.E.2d at 587. Therefore, in order to justify entry of summary judgment for a plaintiff in a defamation action, it naturally follows that the moving party must demonstrate that there is no genuine issue of material fact as to the falsity of the statements in question.

Here, as discussed in Section 2, *supra*, Plaintiff has at the very least made out a prima facie case for libel per se sufficient to survive a motion to dismiss. In particular, Plaintiff has asserted, via affidavit, that the statements made by Defendant in the April 7, 2010 and April 15, 2010 letters were false. Aff. of William C. Mann at 1. In response, it appears to the Court that Defendant has attempted to plead the affirmative defense of truth. *See* Answer ¶ 16 ("Defendant believed then and believes now that the information published was true."). The Court notes that, though Defendant has attached voluminous exhibits to a number of his filings in the instant matter and referenced them throughout,[2] Defendant has not submitted affidavits or otherwise specifically relied on materials actually in the record in making these statements as envisioned by

---

[2] For example, in his response to Plaintiff's motion for summary judgment, Defendant asserts that his letters were "supported by bankruptcy records, other lawsuits, and other news stories written prior to [the letters]" and that he is "supported by experts in the fields and professions that are directly involved in the real estate Ponzi schemes" including an environmental engineer, a surveyor, and a forensic accountant. Resp. to Mot. for Summ. J. at 3 [DE-30].

8

Rule 56. However, pursuant to Rule 56(e), the Court retains considerable discretion in assessing the genuineness of a dispute, and, giving due regard to Defendant's *pro se* status, the Court is of the opinion that neither side has provided conclusive proof that their position is undeniably correct at this juncture and it appears that there is a genuine issue of material fact as to the falsity of the statements contained in the allegedly libelous publications.

In reaching this decision, the Court finds the holding in the recent case of *Boyce & Isley, PLLC v. Cooper*, 2011 WL 1645000 (May 3, 2011 N.C. Ct. App.) to be instructive. In *Boyce*, the plaintiffs argued that the defendants' political advertisements had falsely asserted that their law firm sued the state. The North Carolina Court of Appeals found that, when viewed in a light most favorable to Plaintiffs, there was a genuine issue as to whether the advertisements' assertions were indeed false and that, therefore, the trial court had not erred in refusing to grant defendants' motion for summary judgment. 2011 WL 1645000, at *6 ("A thorough review of the record reveals that there is, at the very least, a genuine issue of material fact as to whether the statements made in Defendants' political advertisement are false. . . . On review of summary judgment, our Court must determine whether there is a genuine issue of material fact as to whether Plaintiffs' political advertisement was indeed false.")[3] Though the instant case involves a motion for summary judgment filed by the plaintiff in a defamation suit and not a defendant, the parallels are clear. Here, as in *Boyce*, when viewing all inferences that can be drawn from the underlying facts in the light most favorable to the non-moving party—here, Defendant— Plaintiff has failed to carry the initial burden of demonstrating the absence of a genuine issue of material fact as to the falsity of the statements. *Diebold*, 369 U.S. at 655; *Celotex*, 477 U.S. at

---

[3] *See also, e.g., Kwan-Sa You v. Roe*, 387 S.E.2d 188, 192-93 (N.C. Ct. App. 1990) (though finding that statements were in fact true so as to result in summary judgment for defendants, the court acknowledged that a dispute as to the truth of the statements would preclude summary judgment).

9

330. Accordingly, summary judgment is not the appropriate vehicle for the Court to resolve such a disputed factual issue. *Faircloth*, 837 F. Supp. at 125.

Therefore, at this early stage of the proceedings, a genuine issue of material fact exists as to the falsity of the allegedly defamatory statements insofar as to preclude entry of summary judgment in favor of Plaintiff. Accordingly, the Court **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED**.

### 4. Defendant's motion to take depositions, remove Plaintiff's counsel, and calendar the case

On January 7, 2011, Defendant filed a second response to Plaintiff's summary judgment motion which also requested leave to take depositions, remove Plaintiff's counsel, and calendar the case. Though not captioned as such, the Court will treat it as a motion requesting these three forms of relief and address each of the requests individually.

In support of his request to remove Plaintiff's counsel, Defendant alleges that Plaintiff's counsel "has represented [Plaintiff] in both his Bankruptcy proceedings and this particular civil suit," "deliberately breached his Oath as an Officer of the Court," and that his "actions are deliberate and represent a pattern of criminal behavior and contributed to [Plaintiff]'s omissions of tax evasion, much like that of the counsel representing Mr. Bernie Madoff." Def.'s Mot. at 2 [DE-32]. In addition, Defendant appears to believe that Plaintiff's counsel is part of a conspiracy to "cover up environmental injustices to low income citizens of Swepsonville" and a "25-year pattern of fraudulent misappropriations that include bank fraud by the Plaintiff and others." *Id.*

Disqualification of an opposing party's counsel is a "serious matter which cannot be based on imagined scenarios of conflict, and the moving party has a high standard of proof to meet in order to prove that counsel should be disqualified." *Plant Genetic Sys., N.V. v. Ciba Seeds*, 933 F. Supp. 514, 517 (M.D.N.C. 1996) (citing *Tessier v. Plastic Surgery Specialists, Inc.*,

731 F. Supp. 724, 729 (E.D. Va. 1990)). The Fourth Circuit "disapproves of 'mechanical' application of disciplinary rules, and instead seeks analysis of the harm to the actual parties before the court." *Rogers v. Pittston Co.*, 800 F. Supp. 350, 353 (W.D. Va. 1992) (citing *Aetna Cas. & Sur. Co. v. United States*, 570 F.2d 1197, 1202 (4th Cir. 1978)).

Here, Defendant has generally alleged that Plaintiff's counsel has a conflict of interest and appears to have accused him of various forms of criminal activity. However, Defendant has provided no concrete reason as to why Plaintiff's counsel is incapable of representing Plaintiff in the instant action merely because he also served as counsel to Plaintiff in Plaintiff's unrelated bankruptcy proceeding. Furthermore, unsubstantiated accusations of criminal involvement, again completely unrelated to the instant action, are not enough to cause this Court to disqualify an otherwise qualified member of its bar. Defendant is reminded that the instant litigation is a diversity action for libel filed by Plaintiff against Defendant, not a opportunity for review of Plaintiff's bankruptcy proceedings, proceedings in which, the Court notes, it does not appear that Defendant himself was even involved. Accordingly, the Court recommends that Defendant's motion to remove Plaintiff's counsel be denied.

Regarding his motions to take depositions and calendar the case, Defendant lists at least thirteen individuals that he wishes to depose in the instant action and requests that the trial date in this matter be scheduled for later this year due to a medical condition. The Court cannot immediately discern anything unreasonable about Defendant's requests. However, to date, a scheduling order has not yet been entered in this case and therefore, no parameters for deposition have been decided and no trial date has been set. According to general practice, once the motion to dismiss currently before the Court has been resolved, the parties will be directed to convene and file a joint Rule 26(f) report governing proposed discovery deadlines, at which time the

11

Court will enter a scheduling order. That scheduling order will address, among other things, the parameters for requesting depositions and the setting of a trial date in this matter. Therefore, at this time, Defendant's requests are premature and the Court declines to take any action. Accordingly, the Court recommends that Defendant's motions to take depositions and calendar the case be denied.

In sum, the Court **RECOMMENDS** that Defendant's motion to take depositions, remove Plaintiff's counsel, and calendar the case be **DENIED**.

## CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that: (1) Defendant's motion to dismiss [DE-26]; (2) Plaintiff's motion for summary judgment [DE-28]; and (3) Defendant's motion to take depositions, remove Plaintiff's counsel, and calendar the case [DE-32] be **DENIED**.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for Plaintiff and the *pro se* Defendant, who have fourteen (14) days from the date of receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This the 14th day of June 2011.

DAVID W. DANIEL
United States Magistrate Judge

12

Case 5:10-cv-00172-BO   Document 44   Filed 06/14/11   Page 12 of 12